UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
WILLIAM J. MURRAY,              )   Docket No. 04cv12123-NG
     Plaintiff,                 )   (Related to Cause No. 3:03
                                )    CV-088P, U.S. District Court
     v.                         )    Northern District of Texas,
                                )    Dallas Division)
TXU CORP., et al,               )
     Defendant.                 )
GERTNER, D.J.
```

### MEMORANDUM AND ORDER RE: ATTORNEYS' FEES AND COSTS
December 14, 2004

I.   **INTRODUCTION**

On March 5, 2004, TXU Corp., TXU Energy Company LLC, and TXU Portfolio Management Company LP (hereinafter, collectively, "TXU") brought a motion to compel the production of documents by non-party American National Power, Inc. ("ANP"). ANP now seeks attorneys' fees and costs that it allegedly incurred in the process of responding to TXU's Motion to Compel.

In making its request for fees, ANP relies on FED. R. CIV. P. 37(a), which permits a party to file a motion to compel another entity to produce discovery and awards the losing party in such an action attorneys' fees. The losing party must "ordinarily pay the other party the reasonable expenses caused by the motion, including attorney's fees, unless the court finds that there was substantial justification for the losing party to take the

position that it did."  8A Wright & Miller, Fed. Prac. & Proc. Civ. § 2207 (2d ed.).[1]

Significantly, the draftsmen who revised the federal discovery rules in 1970 placed new emphasis on the availability of such an award.  Whereas the earlier version of Fed. R. Civ. P. 37(a)(4) presumed no award, unless the losing party was found to have acted without substantial justification, the new rule reverses the burdens.  See id. at § 2288.  The rule now effectively mandates an award of "reasonable expenses, including attorney's fees, incurred in obtaining the order" against the losing party, unless that party's stance was "substantially justified."  Id.[2]  As the advisory note states, ". . . the change in language is intended to encourage judges to be more alert to abuses occurring in the discovery process."  Fed. R. Civ. P. 37(a)(4) advisory committee's note.  Accordingly, in the

---

[1] Fed. R. Civ. P. 37(a)(4)(B) provides:

> If the motion to compel is denied, the court may enter any protective order authorized under Rule 26(c) and shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion, or both of them, to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified, or that other circumstances make an award of expenses unjust.

[2] A motion to compel is "substantially justified" if the motion "raised an issue about which reasonable people could genuinely differ . . . ."  Wright & Miller, supra, § 2288.  Where the motion to compel is granted in part and denied in part, the court has the option of apportioning expenses.  See Fed. R. Civ. P. 37(a)(4)(C).

instant case, I do not believe that TXU's motion to compel was "substantially justified," but at the same time, I find that ANP's response was excessive.  Therefore, I award attorneys' fees, but not in the amount requested.

## II. **ANALYSIS**

On January 15, 2004, TXU served a Massachusetts subpoena on ANP, the former employer of William J. Murray ("Murray").  Murray had filed a wrongful termination action, then pending in the Northern District of Texas, against TXU.  The subpoena requested any and all ANP records and documents pertaining to Murray, including but not limited to: personnel records, employment applications, interview notes, information forms, performance and attendance reports, e-mail correspondence, termination forms, financial compensation records, demand letters, law suits, etc.

ANP objected to the subpoena in writing on January 27, 2004, but, in communications after that written objection, made clear its willingness to cooperate with discovery on a "reduced-scope basis."  Indeed, as early as January 28, 2004, ANP's Assistant General Counsel, Nona S. Pucciariello, telephoned TXU to inform the movant that ANP was willing to reach a compromise on the scope of discovery, notwithstanding its objections to the subpoena.  (Pucciariello Aff. ¶ 10).

At no point prior to filing its motion to compel was TXU amenable to a reduction in the scope of its discovery request.

In fact, TXU repeatedly threatened to litigate when ANP proposed narrowing the scope of discovery.  Nevertheless, on February 25, 2004, while refusing to modify its discovery request, TXU proposed entering into a protective order with ANP.[3]  ANP responded the following day via e-mail, requesting a draft protective order from TXU and confirmation that TXU would reimburse ANP for all costs associated with any document production.  ANP also noted that it was in the process of determining the time and expense involved in responding to the subpoena.  In response, TXU advised that it would forward a draft protective order and affirmed its willingness to reimburse ANP's expenses, but in the same breath, again threatened to file a motion to compel if ANP did not fully comply with the subpoena. (Pucciariello Aff. Ex. D).

TXU e-mailed ANP a sample protective order on March 2, 2004. The same day, ANP faxed a letter to TXU, explaining that it would take several weeks to produce subpoenaed documents, beyond the personnel file, because Murray had left ANP over three years ago and the company had moved from Texas to Massachusetts.  Again, presumably to facilitate the process, ANP offered production on a reduced-scope basis, specifically offering to turn over Murray's personnel records.  (Pucciariello Aff. Ex. G).  Not satisfied

---

[3] To be sure, TXU also agreed that ANP did not have to restore archived e-mail servers to produce e-mails in response to the subpoena.

with this response, on March 5, 2004, TXU filed its motion to compel.

I cannot find substantial justification for TXU's Motion to Compel.[4]  The motion was premature and unjustified.  The movant should have accepted ANP's entirely appropriate offer to provide Murray's personnel file.  In fact, as early as October 2003, TXU was aware that the Director of ANP's Human Resources Department had Murray's personnel file in her office.  (Muncaster Aff. ¶ 6). It would have been reasonable for TXU to assume that the file contained the necessary information, and to seek further discovery through the court only in the event that this proved untrue.  Indeed, it was unreasonable for TXU to involve the court in its attempt to obtain the entire universe of information on Murray.

The underlying suit against TXU alleges that the company terminated Murray in retaliation -- because he expressed concerns that TXU was acting in violation of the Securities and Exchange

---

[4] Further informing this conclusion is my belief that TXU failed to "confer in good faith to narrow the areas of disagreement to the greatest possible extent" and thereby failed to "take reasonable steps to avoid imposing undue burden or expense on [ANP]."  Local Rule 37.1(A); FED. R. CIV. P. 45(c)(1).  In fact, TXU's recent attempts to compromise reveal that it could have done more to avoid court intervention.  In a September 20, 2004, letter to ANP, TXU offered to: 1) serve a second subpoena specifying categories of documents; 2) accept whatever documents ANP was willing to produce in response, subject to the right to later move to compel if ANP improperly withheld documents; 3) agree to a protective order; and 4) pay ANP $ 2,500 for its troubles.  (Movant's Resp. to ANP's Post-Hr'g Mem. at 4). TXU's willingness to reduce the scope of its discovery request after filing the motion to compel reinforces my determination that its motion to compel was premature.

Act of 1934.  TXU argues that, in order to have a claim under the Sarbanes-Oxley Act, Murray must establish that he reasonably believed the company's conduct to violate the Exchange Act. Accordingly, first, TXU seeks to assess Murray's background and expertise through his past employment documents, in the hope of demonstrating that he lacked the expertise necessary to reasonably believe that TXU was violating the Exchange Act. Second, TXU seeks to ascertain the nature of Murray's former employment relationships and the reasons that he left ANP under the theory that this information will somehow shed light on his conflict with TXU.  Third, and finally, TXU argues that it has the right to information about Murray's ANP severance package because Murray claims that TXU breached a contract with him regarding bonus payment.

ANP argues, inter alia, that TXU's vast information request is irrelevant and that the burden to ANP outweighs any nominal relevance -- Murray left ANP several years ago, the Texas office in which he worked is closed, and much of the requested information is in storage or in an electronic format. Furthermore, ANP is concerned about responding to TXU's "broad, indiscriminate demands for confidential and commercially sensitive information" because TXU is a competitor of ANP, and a TXU affiliate is involved in a bankruptcy-related proceeding in which ANP is an interested party.

ANP's concerns are particularly compelling since information about Murray's background, his positions at ANP, and his severance package should be contained in the readily available personnel records. Also, the reason Murray left ANP might well be found in the personnel file. In the worst case scenario, if such information proved unavailable in the file, TXU could have conducted an independent investigation on the basis of public records (of filed complaints against ANP, if any), interviews with former employees, etc. While TXU wanted as much information as possible before taking Murray's deposition -- a fair approach in a discovery dispute involving two parties to a litigation -- the appropriate balance between TXU's and ANP's concerns is different here because ANP is not a party to the underlying litigation. Accordingly, TXU cannot rummage through ANP's files to the extent it seeks in advance of Murray's deposition. Even if TXU would not have found all of the answers in the four corners of Murray's personnel file, it is where the company <u>should</u> have begun, and <u>could</u> have begun, on a voluntary basis.

ANP's offer to provide Murray's personnel file under the condition that a protective order be negotiated was entirely appropriate. ANP was a TXU competitor, and it plainly had obligations vis a vis its former employee.

At the same time that TXU's behavior warrants sanction, there is an element of excessiveness in ANP's indignant responses

to TXU's motions -- a Surreply, a Motion to Strike, affidavit after affidavit saying essentially the same thing, simply because TXU had reiterated its arguments.  In the modest judgment of this Court, all that ANP had to do is state the following: We are willing to turn over the personnel file subject to a protective order.  TXU over-reached and invited over-litigation.  ANP fell for it -- to its detriment.

Accordingly, I denied TXU's Motion to Compel [docket entry # 1], except insofar as it pertains to the production of ANP's personnel file on Murray, which the company would have willingly provided.  I directed ANP to file a petition for attorneys' fees, beginning with the day that it first offered to formally produce Murray's personnel file, or March 2, 2004.  (Indeed, it had made the same offer informally months before.)  ANP has submitted the billing statements of its outside counsel, covering the period from March 3, 2004, through November 30, 2004, totaling Forty-Eight Thousand, Fifty-Two and 53/100 ($48,052.53) Dollars.[5]

---

[5] In contrast to my calculation, ANP's latest reply memorandum on attorneys' fees [docket entry #33] indicates that its total fees and costs in this matter equal $44,851.37.  That total is based on a figure of $3,304.90 for September - November 2004 expenses, instead of $6,506.06, even though ANP submitted a Motion to Correct the Record [docket entry # 28] to reflect the latter figure instead of the former.  In other words, ANP appears to have corrected its mistake in only one place and otherwise carried it through subsequent calculations.

**III. CONCLUSION**

Upon weighing the various factors outlined above, I award to ANP what I consider to be reasonable -- Twenty-Three Thousand, One Hundred Forty-Two And 23/100 ($23,142.23) Dollars.[6]

**SO ORDERED.**

**Date:  December 14, 2004**          **/s/NANCY GERTNER, U.S.D.J.**

---

[6] I arrive at this sum as follows: $16,868.17 (Bill # 623477, dealing with the opposition to TXU's motion to compel) + $1,848.00 (Bill # 636844, dealing with ANP's negotiations with TXU) + $6,506.06 (Bill # 623477, dealing, inter alia, with hearing preparation) - $2080.00 (Bill # 623477, dealing with ANP's opposition to TXU's October 5 letter to this Court).

In retrospect, it would have been better if the Court had addressed the Motion to Compel immediately after it was filed. But the Court's calendar made this impossible. In any event, the Court's delay does not justify counsels' excessive submissions. Indeed, as each day passed without word from the Court, the additional time should have provided further incentive for the parties to resolve this dispute.